

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.  03-61751-CIV-HUCK/TURNOFF**

FILED by _____ D.C.

APR 2 2 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

SAMUEL NETO, on his own behalf and
others similarly situated,

      Plaintiff,

vs.

THE CAR SALON, LLC., a Florida
corporation, and PBS OF CENTRAL
FLORIDA, INC., a Florida corporation,

      Defendants.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This Fair Labor Standards Act ("FLSA") case is before the Court on Defendant, PBS of

Central Florida, Inc.'s ("PBS") Motion to Dismiss or, in the Alternative, Motion for Summary

Judgment [DE # 24], filed on January 21, 2004.  On January 26, 2004, the Court ordered that,

because PBS's Motion relied on matters outside the Complaint, the Motion to Dismiss was denied.

However, the Court ordered that it would consider PBS's Motion for Summary Judgment after

Plaintiff, Samuel Neto, had an opportunity to take discovery of the issues raised in that motion.  Neto

has completed his discovery and has filed his memorandum and supplemental memorandum in

opposition.  PBS has filed its reply memorandum.  Therefore, the Motion for Summary Judgment is

ripe for resolution.

In its motion, PBS asserts that it is not an "employer" under the terms of the FLSA and,

therefore, is not liable to Neto for unpaid overtime (Count I) or Statutory and Contractual Guarantees

and Obligation of Employee Leasing Company (Count II).  The Court has reviewed the parties'

1



respective legal memoranda, the record and relevant case law and for the reasons stated below finds that PBS was not Neto's employer for purposes of his FLSA claim.  Therefore, PBS's Motion for Summary Judgment will be granted as to Count I.

<u>**Background**</u>

On September 17, 2003, Neto filed his original Complaint against Defendant, The Car Salon, L.L.C., in which he alleged that The Car Salon operated a car wash where Neto worked as a laborer, was his employer and was liable to him for unpaid overtime pay under the FMLA.  The Car Salon answered the Complaint, admitting that it was Neto's employer but denying liability under the FMLA.  On December 11, 2003, Neto filed his First Amended Complaint adding PBS as a Defendant, alleging that PBS was an "employment leasing company" that exercised control over Car Salon employees and as such was liable as Neto's employer.  In his First Amended Complaint, Neto seeks recovery of alleged unpaid overtime pursuant to the FLSA (Count I) and pursuant to a "Statutory and Contractual Guarantee and Obligations of Employee Leasing Company" (Count II).  PBS answered the First Amended Complaint, denying that it was Neto's employer or was liable in any respect to him.  On March 10, 2004, a default was entered against Car Salon.  On January 21, 2004, PBS filed this motion in which it has established the following.[1]

PBS is a professional employer organization, otherwise known as an employee leasing company.  As such, PBS provides payroll, human resource and employee benefits services to its clients, such as Car Salon.  PBS entered a Client Services Agreement with Car Salon to provide employee leasing and payroll services to Car Salon.  In particular, PBS would, in return for a fee to

---

[1]These facts are taken from PBS's Statement of Material Facts Upon Which There Is No Issue To Be Tried which Neto did not refute and Neto's Statement of the Facts.  In general, there are no material facts in dispute, only the implication of those facts.

be paid by Car Salon, issue paychecks to employees on its own account in amounts and as dictated by Car Salon, pay related employment taxes to the governmental agencies, pay workers' compensation premiums, and pay unemployment compensation taxes. The Client Services Agreement incorporated the requirements of Fla.Stat. §468.525(b), which obligated PBS to pay Car Salon's employees' wages regardless of whether Car Salon provided payroll funds to PBS. Nevertheless, at all times material, Car Salon retained its status as employer of its workers, including Neto. Car Salon exclusively exercised control over Neto's day-to-day duties and job sites of Neto. Pursuant to the agreement between PBS and Car Salon, an employee, upon being hired by Car Salon, receives a packet of information from PBS describing the employee leasing arrangement and detailing the benefits available to the employee. However, PBS in no way directed or controlled Neto's work, all of which was performed at Car Salon's place of business and for the benefit of Car Salon, not PBS. At all times, Car Salon exercised exclusive actual control over Neto and his employment at the car wash. PBS did not control the manner or means by which Neto and other Car Salon employees performed the work assigned to them by Car Salon. PBS did not own or control the facility where Neto worked, nor did PBS own or control the equipment and facilities used by Neto while working at Car Salon. Neto's work was integral to Car Salon's business as a car wash, but not to PBS's business as an employee leasing company. PBS paid the leased employees at Car Salon according to the directions provided by Car Salon. In this regard, PBS required that it be paid the payroll amount before Car Salon received its payroll checks. The relationship between Plaintiff and PBS, similar to the one between PBS and any other leased employee at Car Salon, was to last only as long as Car Salon wanted it to last. Once Car Salon cancelled its relationship with PBS, PBS's relationship with the leased employees would end. However, if PBS cancelled its relationship with

3

Car Salon, the leased employees would continue to work at Car Salon. With respect to the leased employees' actual working relationship at the car wash, Car Salon alone: (a) recruited and hired them (hiring whichever employees it chose), determined how many persons to hire, (b) interviewed them, (c) trained them, (d) set their hours and work schedule, (e) maintained all records with respect to the employees' work schedule, (g) determined their job descriptions and requirements, (h) determined whether employees would work more than 40 hours in any given workweek, and if so, how many hours the employees would work, (I) decided whether to report any overtime hours worked to PBS, (j) managed the workers' day-to-day activities, and the details and methods of their work, (k) determined what wages the employees would receive, and whether and when raises would be given, (l) determined how long workers would be employed as a leased employee, (m) determined how much, if any, sick pay, vacation pay, bonus pay or commissions would be paid to workers, (n) determined for what offenses workers would be discharged, (o) assigned the workers new tasks, and (p) determined the safety of any equipment to be used by the workers.

In response to these uncontested facts, Neto established that, pursuant to the Client Service Agreement, if Car Salon was unable to pay the employees' wages PBS would pay them. In addition, Neto contended that PBS exercised control over Car Salon employees, for FLSA purposes, by (1) providing a new employee packet to all Car Salon employees which outlined the relationship between Car Salon and PBS and advising the employees of the services offered by PBS; (2) providing a PBS employee handbook to all Car Salon employees; (3) requiring Car Salon employees to sign for the PBS handbook; (4) advising the employees that PBS was available to answer their questions regarding benefits, payroll and human resources issues; (5) directly advising Car Salon employees regarding benefits, workers' compensation and other matters; (6) requiring the employees to report

4

to PBS any incidents of sexual harassment or other violations of federal and state employment laws;
(7) providing Car Salon with human resources assistance and training, and (8) PBS preparing the
payroll for Car Salon and paying wages to Car Salon employees. Neto also contended that pursuant
to its contract with Car Salon, as well as its statutory obligation pursuant to Fla.Stat. § 468.525 *et
seq.*, PBS retained sufficient authority over, or right to exercise authority over, Car Salon's
employees, including Neto, to qualify as a joint employer under the FLSA.

## Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there
is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of
law. Fed.R.Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material"
if it is a legal element of the claim under applicable substantive law which might affect the outcome
of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*,
121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead
a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. On a motion for
summary judgment, the Court must review all the evidence and all factual inferences drawn therefrom
in the light most favorable to the non-moving party, and determine whether that evidence could
reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322-23; *Allen*, at 646. While the burden on
the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat
a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla"
of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly
probative is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th
Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary

5

judgment).

### Neto's Claim Under the FMLA

The determination of whether an employer/employee relationship exists, within the meaning of federal labor statutes, such as the FLSA, is a question of federal law. *See Aimable v. Long and Scott Farms*, 20 F.3d 434, 440 (11th Cir. 1994), *cert denied*, 513 U.S. 943 (1994) (interpreting the definition of "employer" under the Migrant and Seasonal Agricultural Worker Protection Act ("MSAWPA"), 29 U.S.C. §§ 1801 *et seq.*, and the FLSA, 29 U.S.C. §§ 201 *et seq.*); *see also Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir. 1996); *Jeanneret v. Aron's East Coast Towing*, 2002 U.S. Dist. LEXIS 12200, at *5 (S.D. Fla. Jan. 29, 2002), *per curiam aff'd*, No. 02-11323, *slip op.* (11th Cir. Nov. 15, 2002).

As a threshold matter, for Neto to prevail on his claims against PBS, he must establish that PBS "employed" him within the meaning of the FLSA. Congress expressly rejected the common-law definition of employment, which is based on limiting concepts of control and supervision. *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947); *Aimable,* 20 F.3d at 439. Rather, an entity "employs" a person under the FLSA if it "suffers or permits" the individual to work. An entity "suffers or permits" an individual to work if, as a matter of economic reality, the individual is dependent on the entity ("economic realities test"). *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961); *Aimable*, 20 F.3d at 439.

Whether the putative employer and employee intended to create an employment relationship is irrelevant to the economic realities test. *See Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471 (11th Cir. 1982). Nor is the labeling of an individual as an employee dispositive of the issue. *See*

6

*Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947). Rather, the courts look to whether the employee depends on the putative employer for his economic livelihood based on their actual working relationship. *See Antenor*, 88 F.3d at 937-38.

There is no question here that Car Salon was Neto's employer. Therefore, the determinative issue is whether PBS was a joint employer. The FLSA specifically covers joint employment relationships. *See id.* at 929; 29 C.F.R. § 791.2 (defining "joint employment" under the FLSA). In determining whether a joint employment relationship exists, the courts traditionally consider several relevant factors: (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire, or modify the workers' employment conditions; (4) the power to determine the workers' pay rates or methods of payment; (5) the preparation of payroll and payment of workers' wages; (6) the ownership of the facilities where the work occurred; (7) whether the work performed a line job integral to the end product; and (8) the relative investment in equipment and facilities. *See Antenor*, 88 F.3d 932 (citing *Aimable*, 20 F.3d at 440-45).

In applying the factors, a federal court is guided by several principles. First, the question of "joint employment" is not dependent on whether the worker is more economically dependent on one putative employer than on the other, because more than one entity can be an employer. Second, the existence of a joint employment relationship depends on the economic reality of all the circumstances, rather than any one factor. Third, the factors are used because they are indicators of economic dependence. Fourth, the joint employment relationship is not determined by a mathematical formula - the court must view each of the factors qualitatively to assess the evidence of economic dependence. Fifth, the inquiry must focus on the issue of economic dependency, not common-law concepts of

7

employment.  Sixth, the FLSA is a remedial statute, and courts must construe it broadly.  See

*Antenor*, 88 F.3d at 932-33.

 In evaluating these traditional factors of joint employment in the context of the unrefuted facts

presented here, it is beyond dispute that Car Salon, not PBS, exercised actual control over the terms

and conditions of Neto's employment as a car washer at the car wash and that he was dependent on

only Car Salon.  The economic reality here is that PBS was not Neto's joint employer.  Indeed, Neto

does not vigorously argue that PBS exercised real control and authority over him with regard to the

traditional employer-employee factors discussed above.  It is beyond real dispute that Car Salon, not

PBS, actually, as opposed to theoretically, exercised virtually all real control over Neto in his

employment at the car wash.  At most, Neto has established that PBS performed human resources

and other administrative functions as contracted in the Client Service Agreement.  In stark contrast,

Car Salon hired Neto, and had the authority to fire him, determined Neto's pay rates and methods

of payment, owned all of the car wash facilities where Neto worked, supervised Neto's work,

assigned his job tasks and otherwise made the relevant day-to-day decisions regarding Neto's

employment.  Because it is so clear that only Car Salon exercised true authority over Neto, a further

detailed discussion of the traditional factors is not warranted.   However, Neto contends that

irrespective of the traditional factors, PBS must be considered his joint employer due to its

undertakings pursuant to the Client Services Agreement.  Therefore, the Court must address this

contention.

 There is no dispute that PBS is an employee leasing company subject to the provisions of

Fla.Stat. § 468.520 *et seq.*, and that PBS entered into the Client Service Agreement with Car Salon

pursuant to that statute, which regulates employee leasing companies.  Under that statute, "employee

leasing" is an arrangement whereby a leasing company, such as PBS, assigns employees to a client, such as Car Salon, and allocates the direction of and control over the leased employees between them. Section 468.525(4) provides that the employee leasing company reserves a right of direction and control over leased employees assigned to the client's location, assumes responsibility for the payment of wages to the leased employees without regard to payments by the client to the leasing company, assumes full responsibility for the payment of payroll taxes, retains authority to hire, terminate, discipline, or reassign the employees (although the client company way have the right to accept or cancel the assignment of any leased employee), and retains a right of direction and control over management of safety, risk, and hazard control at the work site. The employee leasing company must also give notice regarding the relationship between the employee leasing company and the client company to each leased employee. *See Jeanneret v. Aron's East Coast Towing*, 2002 U.S. Dist. LEXIS 12200, at *11.

It would appear, facially, that Fla.Stat. § 468.520 *et seq.* and the Client Service Agreement support Neto's contention that PBS is his joint employer. There are several PBS undertakings which suggest that it has the right to exercise control over Car Salon's employees. The agreement seems to contemplate that PBS is leasing its employees to Car Salon and that the arrangement is one of true joint employment. Moreover, PBS, under the agreement and pursuant to Florida Statutes, assumes specified obligations and duties with respect to Car Salon's employees. Accordingly, Neto contends that since PBS is an employee leasing company governed by Florida's regulatory scheme, which contemplates that the employee leasing company possesses at least some important aspects of an employer under that scheme, PBS is, therefore, Neto's joint employer for FLSA purposes.

However, as indicated above, whether an entity is an employer for purposes of the FLSA is

9

a question of federal law. The requirements of state law regulating the employment relationship are only relevant to the extent that they reflect the "economic realities" of the relationship and if the parties actually followed those requirements. The Supreme Court and the Eleventh Circuit have clearly instructed that in determining whether an employment relationship exists for FLSA and similar federal statutes purposes, the court must examine the actual working relationship between the parties to determine whether the employee was economically dependent on the putative employer. As indicated above, in undertaking that examination of real working relationship between PBS and Neto in view of the traditional employment factors test discussed above, there is no doubt that the economic reality is that Car Salon was Neto's sole employer. Accordingly, summary judgment should be entered as to Count I.

### Neto's State Claim

Count II, the only remaining claim, alleges a cause of action against Defendant PBS for violations of statutory and contractual guarantees and obligations pursuant to Fla.Stat. §486.525(4)(b) (the "state claim"), which is before this Court under the Court's supplemental jurisdiction.[2] The Court may *sua sponte* raise a jurisdictional defect at any time. *See Barnett v. Bailey*, 956 F.2d 1036, 1039 (11th Cir. 1992). Under 28 U.S.C. § 1367(c), the Court has discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims where the court has dismissed all claims over which it has original jurisdiction. *See Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1567 (11th Cir. 1994). In this case, this Court's granting of summary judgment on Plaintiff's FLSA claim dismisses the count over which the Court has original jurisdiction. Plaintiff's state claim apparently concerns a case of first impression, involving a uniquely

---

[2] The Court does not have diversity jurisdiction as to Count II. *See* 28 U.S.C. §1332.

state claim and requiring statutory interpretation for which there may not be state precedent.[3] Therefore, it would be better for a Florida court to resolve such legal issues with respect to the alleged violations of Fla.Stat. §486.525(4)(b). Accordingly, the Court has determined that dismissal is most appropriate for resolution of these purely state law questions. This is especially true since the Court is dismissing the Plaintiff's federal law claims prior to trial. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that dismissal of state law claims is strongly encouraged where the federal law claims are dismissed before trial); *see also Stachel v. City of Cape Canaveral*, 51 F. Supp. 2d 1326, 1332 (M.D. Fla. 1999) (after granting summary judgment on the plaintiff's § 1983 claims, dismissing the plaintiff's state law claims on its finding that "the remaining state law claims are best resolved by Florida courts").

## Conclusion

For the reasons stated above, it is hereby

ORDERED that the Court GRANTS the Motion for Summary Judgment [DE #24] of Defendant PBS of Central Florida, Inc. as to Count I of the Complaint, and Count II is hereby DISMISSED without prejudice for lack of subject matter jurisdiction. It is further

DONE and ORDERED in Chambers at Miami, Florida this 23 day of April, 2004.

PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Counsel of Record

---

[3] The Court notes that neither side was able to cite to any relevant precedent.

11